[Crim. No. 37132. Second Dist., Div. One. Apr. 4, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMA CAMP, Defendant and Appellant.

**COUNSEL**

David E. Frank, under appointment by the Court of Appeal, for Defendant and Appellant.

Burt Pines, City Attorney, Rand Schrader and Ray L. Hart, Deputy City Attorneys, for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, J.*—**This court is asked to consider whether a person may be validly convicted of a violation of section 11377 of the Health and Safety Code,[1] possession of a controlled substance, in this case phencyclidine (PCP)[2] without proof of the quantity possessed. We conclude that such a conviction is proper and affirm the judgment of conviction in this case.

---

*Assigned by the Chairperson of the Judicial Council.

[1]All code citations are to the Health and Safety Code unless otherwise indicated.

[2]Former section 11056, subdivisions (a), (b)(8). Effective January 1, 1979, see sections 11378.5, 11055, subdivision (e). (Stats. 1978, ch. 699.)

## PROCEDURAL HISTORY

Defendant was charged with violation of section 11377. She pleaded not guilty. Her Penal Code section 1538.5 suppression motion was denied and the case proceeded to a trial by jury. At the conclusion of the People's case, defendant moved for a judgment of acquittal pursuant to Penal Code section 1118.1. The motion was denied and she presented her defense. A guilty verdict was returned and following appropriate procedure defendant was sentenced. She appealed to the appellate department of the superior court (Los Angeles) which affirmed her conviction. A motion for rehearing was denied, but the appellate department certified the case to this court on the issue stated at the beginning of this opinion. (Cal. Rules of Court, rules 63(a), (b), (c).) We accepted the certification and ordered the case transferred to this court. We now affirm.

## FACTUAL SUMMARY[3]

During the course of a traffic accident investigation conducted in the early morning hours of December 10, 1978, a police officer observed defendant walking across the street, outside a marked crosswalk. As a result of her actions, a vehicle was forced to come to a complete stop.

The officer approached defendant to issue a citation for failure to yield to on-coming traffic. In speaking with defendant, the officer noticed she was unresponsive and had a blank stare. Suddenly, her mood completely changed and she became combative and hysterical. Based on his training and experience, the officer suspected that defendant was under the influence of PCP. He detained her and conducted a warrant check, through which he learned that there was an outstanding bench warrant for her arrest.

The officer arrested defendant. As she entered the police vehicle, defendant dropped a hand-rolled cigarette, which the officer retrieved. On the way to the police station, defendant twice escaped from the police vehicle, and was recaptured.

---

[3]Our summary is taken from the engrossed settled statement on appeal filed in lieu of reporter's and clerk's transcripts. (Cal. Rules of Court, rule 184.) After the case was transferred here, the People sought leave to augment the record by presenting a transcript of testimony which, it was claimed, contradicted the settled statement. Since both sides accepted the settled statement procedure for presenting the facts on appeal, and since the statement was duly settled by the trial court, the People's motion was denied.

The handrolled cigarette was examined by a police criminalist. It weighed .4 gram, and "contained mint leaves laced with phencycledine." No quantitative test was made to determine the amount of PCP by weight or volume.

A police sergeant, trained in the use and packaging of narcotics, testified that one of the most common ways to use PCP is to place it on mint leaves. The PCP-laced leaves are then handrolled into cigarettes. The sergeant testified that such a cigarette, weighing .4 gram, "would absolutely create a narcotic effect in any person who smoked it." A .4 gram cigarette of that kind is very large, and is commonly referred to as a "two-hit" cigarette, meaning that a narcotic effect would be produced by only two puffs.

After defendant's motion for acquittal was denied, she presented evidence in defense: a witness who said that he was at the scene of the accident and did not observe defendant to be acting strangely or to drop a cigarette; and her own testimony that she was not under the influence of alcohol or a drug, did not drop the cigarette, and became hysterical only when she was arrested.

## DISCUSSION

Defendant argues that the foregoing is not sufficient to sustain the conviction for possession of PCP.

The standard is clear: "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; *Jackson v. Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].) And since defendant presented the issue at the close of the People's case-in-chief, by a Penal Code section 1118.1 motion for acquittal, we test the sufficiency by the evidence as it stood at that point. (*People v. Belton* (1979) 23 Cal.3d 516, 519-523 [153 Cal.Rptr. 195, 591 P.2d 485].)

The elements of the crime of unlawful possession of a controlled substance, such as PCP, are dominion and control of the substance in a

quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially. (*Russell* v. *Superior Court* (1970) 12 Cal.App.3d 1114, 1117 [91 Cal.Rptr. 255].)

█ Defendant's challenge is limited to the sufficiency of evidence that she possessed a usable amount of PCP.

The leading case on usable quantity is *People* v. *Leal* (1966) 64 Cal.2d 504, 512 [50 Cal.Rptr. 777, 413 P.2d 665].) Prior to *Leal*, a number of cases had held that possession of even a useless trace or a burned residue of a contraband drug was a crime. The *Leal* court pointed out that the Legislature intended to prohibit possession of such drugs in a quantity sufficient to be used, not amounts so minute as to have no use at all. The Legislature "proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance." (*People* v. *Leal, supra*, 64 Cal.2d at p. 512; italics in opinion.) *Leal* was a heroin case, but the principle it announced is applicable to other controlled substances. (See *People* v. *Johnson* (1970) 5 Cal.App.3d 844, 848 [85 Cal.Rptr. 238].)

The evidence in this case is that the cigarette defendant apparently tried to abandon weighed .4 gram, was handrolled, made up of mint leaves "laced[4] with PCP" and that such a cigarette was sufficient to produce a narcotic effect on a person who takes as little as two puffs.

This is certainly enough for a trier of fact to conclude that the *Leal* standard was satisfied. That standard is reflected in CALJIC No. 12.00 which was given to the jury in this case.

Defendant argues that it is not enough. She contends that a PCP possession conviction requires a chemical analysis of the substance sufficient to determine the weight or volume of the PCP in her cigarette. No case has been cited that so holds, and we know of none.

---

4"Laced" is not a scientific term. Its lexicographic meaning (in this sense; we are not discussing shoelaces) is "to mingle or dash" one substance with another (the Oxford Universal Dict. (3d ed. 1955) p. 1096); "to add a dash" or "to give savor or zest to" (Webster's Fourth New Collegiate Dict. (1965)); as "a dash of spirits (or formerly sugar) added to coffee or some other beverage." (Webster's New Internat. Dict. (1928 ed.) p. 1202.)

In *People* v. *Karmelich* (1979) 92 Cal.App.3d 452, 455-456 [154 Cal.Rptr. 842], defendant was found to be in possession of nine balloons containing "a substance resembling heroin." A chemical analysis confirmed that there was heroin in the substance, but not how much (except that it was at least one part per thousand). The argument presented was the same as in this case: that in the absence of further quantification there was not enough evidence of a usable quantity of heroin. The argument was rejected. The court pointed out that *Leal* discussed but did not overrule cases that had upheld convictions based upon only minute quantities of narcotics. It condemned cases in which no more than a residue, pointing to prior use, had been found. "The decision in *Leal* must be limited to such cases, where only a residue unuseable for any purpose, is found; it does not extend to cases such as this, comparable to the cases distinguished in *Leal*, where the presence of heroin itself, not a mere blackened residue on a spoon, was discovered." (92 Cal.App.3d at p. 456. See also *People* v. *Piper* (1971) 19 Cal.App.3d 248, 250 [96 Cal.Rptr. 643]; *People* v. *Pohle* (1971) 20 Cal.App.3d 78, 82 [97 Cal.Rptr. 364]; *People* v. *Johnson, supra*, 5 Cal.App.3d 844, 848.)

Defendant seeks to explain *Karmelich* on the ground that the substance in question "itself resembled heroin" while in her case only mint leaves were visible to the naked eye. This seems to us a classic "distinction without a difference." It is immaterial whether the contraband is visually indistinguishable because it is mixed together with an inert substance of similar color and texture, or because, as a clear liquid, it adheres and dries onto the material to which it is fixed.

In either case, the contraband was added to a substance for purpose of ingestion—its obvious intended use.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied April 29, 1980, and appellant's petition for a hearing by the Supreme Court was denied May 28, 1980.