[Crim. Nos. 6330, 6331. Fifth Dist. Dec. 15, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK D. HARDIN, Defendant and Appellant.

■■■■■■■■■■■■■■■■■■■■■■■■

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, George Bond and Louis N. Hiken, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Willard F. Jones and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOOLPERT, J.**—Defendant admits to being an ostensible seller of methamphetamine. In making his sale to a deputy sheriff he assured his buyer that for the $120 price paid the effect on the buyer would be highly satisfactory. In fact, the sheriff recalled the assurances to be: "[I]t would knock your socks off, or knock your head off . . . ." In reality the substance sold included only a small amount of methamphetamine.

On this appeal from his conviction after jury trial, defendant urges "the prosecution must show that the methamphetamine in question was of sufficient quantity so as to have a potential for abuse associated with a stimulant effect on the central nervous system." Not having been charged with a fraudulent sale, he claims he sold the officer "fake dope" in an attempt to get even with the paid informant who caused his arrest. We conclude that defendant was properly convicted without a jury instruction to the effect that to constitute the crime a usable amount of methamphetamine must have been present in the substance sold.

We need not detail all of the proceedings below. Defendant was separately charged with several crimes in two informations. In the principal case be-

fore us he was convicted of violating Health and Safety Code section 11379.[1] He admitted the truth of a prior conviction. He then agreed to a guilty plea in the second case, admitting to violating Penal Code section 245, subdivision (a). A burglary count was dismissed. After being sentenced to prison he appeals from both judgments. Because the convictions were combined for sentencing, defendant appealed in both cases to protect against sentencing errors which might arise should we reverse the first judgment. Because we affirm the judgment in the first case, we also affirm in the second case, there being no sentencing error.

## THE FACTS

We recite only the facts pertinent to the question before us.

On August 14, 1981, at approximately 8:30 p.m., Kern County Deputy Sheriff Edward Lavelle and Dean Raines drove in Officer Lavelle's undercover car to 9417 Main Street in Lamont, California. Officer Lavelle was assigned to the narcotics task force at the time, and Raines was a paid informant. The purpose of going to the Main Street address was to purchase methamphetamine.

Officer Lavelle parked in a vacant field adjacent to the Main Street building. He honked the car's horn several times. This signal, as well as the sale itself, was previously arranged.

The defendant and his wife approached the vehicle on the passenger side. A short conversation ensued, after which Officer Lavelle, still in the driver's seat, gave the defendant a $100 bill and a $20 bill. The defendant then gave Officer Lavelle a plastic bindle.

Subsequently, the defendant walked around the vehicle to the driver's side and engaged in a conversation with Officer Lavelle. During that conversation, Officer Lavelle asked the defendant if "this was good crank" (crank being a street name for methamphetamine). The defendant replied, giving the assurance mentioned above.

Dan Edward DeFraga, a criminalist for the Kern County Sheriff's lab, testified that the bindle defendant handed Officer Lavelle contained a powder weighing 757 milligrams, and that its methamphetamine weight content was "more than half a percent." Asked whether it could be "much more," he responded: "Yes and probably is." He further said, "As far as scientifically speaking, it is, I would consider it a large amount." Although the crimi-

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

nalist did not quantitate the substance, he testified that the methamphetamine within the powder was a "usable amount." He arrived at this conclusion by what he termed a semiquantitative process. With respect to quantity, his analysis was limited to a determination of whether there was any methamphetamine, and if so, whether more than a trace amount was present. No contrary evidence was presented.

The defendant claims that the powder in the plastic bindle which he sold to Officer Lavelle consisted solely of epsom salt, baking powder, and Vitamin B, and that there was no methamphetamine in the powder or on the premises located on Main Street. He claims that he sold the officer "fake dope" in an attempt to get even with the paid informant, Raines. The fake dope was made up by the defendant and one Gary Littrell. The defendant asserts that he never intended to sell "real drugs" to Raines.

## MUST A USABLE AMOUNT OF CONTROLLED SUBSTANCE BE SOLD?

The defendant was convicted of a violation of section 11379 which prohibits the sale of methamphetamine as specified in section 11055, subdivision (d)(3). We quote the pertinent part of those sections. "Except as otherwise provided in Article 8 (commencing with Section 4211) of Chapter 9 of Division 2 of the Business and Professions Code, every person who . . . sells . . . any controlled substance which is . . . specified in subdivision (d), of Section 11055, unless upon the prescription of a physician [etc.] . . . shall be punished . . . ." (Health & Saf. Code, § 11379.)

"(d) Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:

"(1) Amphetamine, its salts, optical isomers, and salts of its optical isomers.

"(2) Phenmetrazine and its salts.

"(3) Any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers.

"(4) Methylphenidate." (Health & Saf. Code, § 11055, subd. (d).)

Defendant contends that in order to be convicted, section 11379 and section 11055, subdivision (d), must be read in a manner requiring the prosecution to show the amount of methamphetamine sold was enough to have a potential for abuse associated with a stimulant effect on the central

nervous system. Under this interpretation, the above sections would prohibit only sales of quantities sufficient to have a potential for abuse.

This exact contention was made in a case not cited by either party, *People v. Diamond* (1970) 10 Cal.App.3d 798 [89 Cal.Rptr. 126]. We quote three paragraphs from that case which succinctly state and resolve the issue: "Defendant contends under the decision in *People v. Leal,* 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], a conviction of the offense of selling a dangerous drug is not supported by the evidence unless it is shown the quantity of the drug sold was 'usable'; proof the quantity sold was a usable quantity must show it was sufficient 'to provide a narcotic effect'; and the evidence in the case at bench does not support such a showing.

"The court in *Leal* considered the question whether possession of a minute crystalline residue of a narcotic constituted the offense of possession of a narcotic; analyzed prior decisions on the subject, including *People v. Sullivan,* 234 Cal.App.2d 562 [44 Cal.Rptr. 524]; and concluded its opinion with the following determinative language: 'Hence, the possession of a minute crystalline residue of narcotic useless for *either* sale *or* consumption, as *Sullivan* points out, does not constitute sufficient evidence in itself to sustain a conviction. Since in the present case the prosecution proved no more than defendant's possession of traces of narcotics and did not show that such residue was usable for sale *or* consumption, we remit it to the trial court for the purpose of ascertaining whether or not such factual elements were present.' (*People v. Leal, supra,* 64 Cal.2d 504, 512.) (Italics ours.)

"The rule in *Leal,* assuming it applies to dangerous drugs as well as narcotics, perforce its statement, does not apply to an intentional sale. Proof of the intentional sale of a dangerous drug is proof the quantity sold was 'usable for sale.' Contrary to defendant's contention, to support a conviction of selling a dangerous drug it is not necessary to prove the quantity of the drugs sold, when consumed, would have the effect it ordinarily is expected to produce, which defendant refers to as a 'narcotic effect.' " (*Id.,* at pp. 800-801, fn. omitted.)

In our case an expert testified that more than a useless trace of methamphetamine was present. In his opinion it was at least a usable amount. However, the prosecution did not present evidence that the amount concerned would have any particular effect on the user. It was not necessary. A qualified expert confirmed the presence of the substance concerned. We assume, without ruling, that the presence of the substance took the transaction out of the fraudulent sale category. (§ 11382.) Rather than "how usable," indeed "whether usable," the fact of the presence of methamphetamine in a completed sale distinguishes the case before us from the "mere trace" or

"residue" concerns of those courts which have had to deal with contaminated spoons, containers, etc., when mere possession has been the charge.

Even if the Legislature had required a usable amount to be sold, "[t]he fact the parties to the transaction treated it as a salable quantity is evidence that it was a usable quantity." (*People* v. *Gossett* (1971) 20 Cal.App.3d 230, 234 [97 Cal.Rptr. 528].) The jury was so instructed when the court gave CALJIC No. 12.32 (4th ed. 1979). The instruction unnecessarily assumed a usable amount was required. Defendant was not prejudiced by this excess of caution.

Because of appellant's statutory construction argument, we examine the statute to determine whether the Legislature intended to prohibit the sale of any amount of methamphetamine, irrespective of usability.

In *People* v. *Leal* (1976) 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], a possession case, the court was faced with the use of the words "any narcotic." The court observed, "As noted earlier, the complete statutory language is 'any narcotic other than marijuana,' a phraseology which leaves unresolved the question whether the word 'any' refers to the quantity of narcotic present or only to its type." (*Id.*, at p. 508, fn. 6.) Because of this uncertainty, and because a comparison of various offenses placed possession in a more severely punished category than such misdemeanor offenses as possession of drug paraphernalia, the court held the Legislature did not intend the possession section to include the mere possession of traces or residue of narcotics which would be "useless for either sale or consumption . . . ." (*Id.*, at p. 512.) However, the court did not suggest that the same conclusion applies to a sales charge. To the contrary, the language used in the footnote indicates that all the Legislature need do is be clear in making "any" refer to the drug quantity rather than type. The Legislature has done so in this instance.

Defendant supports his interpretation with a grammatical analysis of section 11055, subdivision (d). Defendant also relies upon a Michigan case which interpreted a similarly worded statute. (*People* v. *Busby* (1974) 56 Mich.App. 389 [224 N.W.2d 322].) Defendant would have the phrase "having a potential for abuse associated with a stimulant effect on the central nervous system" construed to modify the word "quantity" in the earlier phrase "any quantity." The statute would then, in essence, say "Any quantity which is equal to that quantity sufficient to produce a potential for abuse . . . ."

In *Busby,* a Michigan appellate court found that the lack of a comma after the phrase "any quantity" led to a conclusion that "having a potential for

abuse associated with a depressant effect upon the central nervous system" was adjectival and modified "any quantity of the following substances." (*People* v. *Busby, supra,* 56 Mich.App. 389, 393 [224 N.W.2d 322, 324].)

The defendant in *Busby* argued that the amount in question had to be enough to have the potential for abuse and that that amount had to be proven by quantitative analysis. However, the *Busby* court looked to other words in the statute and refused to read the Michigan statute in that way. As the court stated, "We therefore hold that quantitative analysis is not required before criminal possession of the drugs or substances allegedly possessed by the defendant may be established." (*People* v. *Busby, supra,* 56 Mich.App. at p. 394 [224 N.W.2d at p. 325].) Earlier in the case the *Busby* court noted that "It seems to be completely illogical to hold that it was the legislative intent that the words 'having a potential for abuse' mean that in each prosecution that a determination must be made as to whether or not a particular amount has 'a potential for abuse.'" (*Busby,* at pp. 393-394 [224 N.W.2d at p. 324].)

Defendant's reliance on *Busby* fails for another reason. The *Busby* court reached the correct result irrespective of its grammatical approach. The court was able to find no quantity requirement when it unknowingly used the phrase "having a potential for abuse . . ." to modify "any quantity of the following substances," not the word substances. While the phrase "having a potential for abuse associated with a depressant effect upon the central nervous system" ultimately contributes to the qualification of the phrase "any quantity of the following substances," it actually modifies "substance" which in turn modifies quantity. Therefore, "substance," with its qualifications, modifies the word quantity. In essence, we believe the statute should be read: "Any substance, regardless of quantity, which has a potential for abuse associated with a stimulant effect on the central nervous system."

■ We add a rule of statutory interpretation which requires "that if there exists an uncertainty or ambiguity in a statute, qualifying words, phrases or clauses are construed as referring to the words, phrases and clauses immediately preceding and not to more remote words, phrases or clauses." (*Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 496 [138 Cal.Rptr. 185].) "Substance" is closer to the phrase in question than is the word "quantity."

■ It is also clear that the Legislature, in drafting section 11055, specifically wanted the amount sold to be irrelevant for purposes of defining a violation of the statute, especially for sales of methamphetamine. The third sentence of subdivision (d)(3) reiterates the emphasis on a violation being

for a sale of any amount. It states, "(3) *Any substance* which contains *any quantity* of methamphetamine, including its salts, isomers, and salts of isomers." (§ 11055, subd. (d)(3), italics added.) Methamphetamine is the drug defendant was convicted of selling.

The judgment is affirmed.

Zenovich, Acting P. J., and Hamlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1984.