717 P.2d 73

**STATE of New Mexico,
Plaintiff-Appellee,**

**v.**

**Lorinda HERNANDEZ,
Defendant-Appellant.**

**No. 8626.**

Court of Appeals of New Mexico.

Feb. 18, 1986.

Certiorari Denied March 26, 1986.

Jacquelyn Robins, Chief Public Defender, Deborah A. Moll, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Charles D. Noland, William Primm, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendant appeals from her conviction for distribution of amphetamine, contrary to NMSA 1978, Section 30–31–22(A) (Repl. Pamp.1980). She raises seven issues. We answer issues (a) through (f) summarily. We discuss issue (g) in detail. The issues are:

(a) Whether prosecutorial misconduct in closing argument deprived defendant of a fair trial;

(b) Whether the trial court improperly admitted evidence of other bad acts;

(c) Whether the trial court erred in not allowing defendant to question a police witness about his knowledge of the whereabouts of a confidential informant;

(d) Whether the failure of the informant to appear at the trial deprived defendant of a fair trial;

(e) Whether the trial court should have granted a mistrial when it directed a verdict on the conspiracy count because prejudicial evidence concerning the conspiracy was before the jury;

(f) Whether the trial court is authorized to order defendant to pay restitution to the state in the amount of the money she charged for the drugs; and

(g) Whether there was a failure of proof, in that the state did not prove that the amphetamine transferred had a potential for abuse associated with a stimulant effect on the central nervous system.

Issues raised in the docketing statement but not briefed are abandoned. *State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

We affirm.

### Facts

The facts are simple. John Guinta is a police officer. He was working undercover in a narcotics operation. Mike Tice was an informant who was working with him. Tice's role was to introduce Guinta to people likely to sell drugs to him.

Tice and Guinta were hanging around in the Dairy Queen. Guinta met defendant there. People at the Dairy Queen decided to have a party that night. Guinta went to the party at 9:30 p.m. Defendant was already there. Shortly before midnight, Tice approached Guinta. As a result, Guinta went to talk to defendant. Defendant offered to sell Guinta crystal, i.e., speed or amphetamine. Guinta agreed. Shortly after midnight, defendant called Guinta to the back of the house and gave him a plastic bag containing a yellow powder.

### Issues Answered Summarily

a. Defendant contends that the prosecutor's rebuttal closing argument deprived her of a fair trial. Counsel is entitled to a wide latitude in closing argument. *State v. Venegas,* 96 N.M. 61, 628 P.2d 306 (1981). The courts look to the context in which the argument is made and, as long as the argument has a basis in the evidence, it is permissible. It is not necessarily reversible error to comment that the evidence is uncontradicted. *State v. Martinez,* 98 N.M. 27, 644 P.2d 541 (Ct.App. 1982). Similarly, it is permissible to comment on defendant's failure to produce witnesses if the comment is not one on defendant's failure to testify. *State v. Ennis,* 99 N.M. 117, 654 P.2d 570 (Ct.App.1982). Moreover, defense counsel can invite improper comment by the prosecutor. *State*

v. *White*, 101 N.M. 310, 681 P.2d 736 (Ct. App.1984). All of these principles are applicable here. The prosecutor's argument was a legitimate response to defense counsel's examination of the main witness against defendant and to defense counsel's closing argument.

■ b. Defendant complains that the testimony that she tried the substance and found nothing wrong with it was improper evidence of other bad acts, i.e., evidence that defendant committed the crime of possession of a controlled substance when she was only charged with sale of a controlled substance. This evidence showed that defendant knew what substance it was she was transferring, *see State v. Turner*, 97 N.M. 575, 642 P.2d 178 (Ct.App.1981), and, accordingly, there was no unfair prejudice. *See State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct.App.1977).

■ c. Defendant contends that the trial court did not allow her to cross-examine Guinta concerning Guinta's knowledge of Tice's failure to appear at his sentencing. There are two answers to this contention. First, there is nothing in the record to show that the court disallowed the proposed examination and, second, defendant was allowed to extensively go into Tice's deal with the authorities and his failure to appear at his own sentencing. Thus, this is not a case like *State v. Baldizan*, 99 N.M. 106, 654 P.2d 559 (Ct.App.1982), relied upon by defendant, in which the trial court would not allow any inquiry into the witness' bias. There is no factual basis for this issue.

■ d. Defendant complains that Tice's failure to appear at trial, although duly subpoenaed, deprived her of the right to impeach Tice's credibility. Again, there is no factual basis for the issue. Although a subpoena was issued for Tice, it does not appear to have been served. Moreover, there is no legal basis for the issue. Defendant relies on the constitutional right to confront the witnesses against her. However, no authority is cited for the proposition that one has a constitutional right to

confront a non-witness or call a witness who has not been duly served with a subpoena. *In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984).

■ e. Defendant contends that the trial court should have granted a mistrial once it directed a verdict on the conspiracy count because all of the prejudicial testimony concerning the alleged conspiracy was before the jury. At trial, defendant argued that the court should not direct the verdict as to the conspiracy until after the jury had convicted her of it. She reasoned that the fact that the court directed out one count would persuade the jury that there was good evidence of the other count. Apparently, defendant also wanted to argue to the jury that there was no evidence of conspiracy and, therefore, no evidence of distribution. As the state points out, the answer to the argument made at trial is that defendant does not explain her argument in terms of any intelligible principle that would not inevitably require a mistrial for any defendant whenever a court decides that one or more charges should not go to the jury. No authority is cited for this proposition. *In re Adoption of Doe.*

To the extent that defendant argued in the trial court that the mention of conspiracy in the opening statement prejudiced defendant, that contention is answered by *State v. Gilbert*, 99 N.M. 316, 657 P.2d 1165 (1982). To the extent that defendant argues that the conspiracy testimony was prejudicial, that issue was not raised in the trial court, *see* NMSA 1978, Crim., Child. Ct., Dom.Rel. & W/C App.R. 308 (Repl. Pamp.1983), and lacks merit for the same reasons that defendant's complaint about the possession testimony lacks merit. *See* discussion under (b) above.

f. The issue is whether the restitution statute contemplates a defendant paying restitution to the state for money paid to her in a drug transaction. This issue is controlled by *State v. Taylor*, 104 N.M. 88, 717 P.2d 64, (Ct.App.1986).

### Sufficiency of the Evidence

■ g. Defendant argues that her conviction must be reversed because there was

neither evidence of nor instruction on that element of the crime which requires that the substance she sold had a potential for abuse associated with a stimulant effect on the central nervous system. Section 30-31-22 provides that it is unlawful for any person to intentionally distribute certain controlled substances. The controlled substances are listed in schedules. NMSA 1978, §§ 30-31-6 to -10 (Repl.Pamp.1980). Many substances are simply listed by name. However, in the case of amphetamine, the substance is listed as follows:

> Unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:
> (a) amphetamine * * *.

§ 30-31-7(A)(3). Defendant argues that the state must prove that the amphetamine defendant sold was of a sufficient quantity to have a potential for abuse associated with a stimulant effect.

*United States v. Picklesimer*, 585 F.2d 1199 (3rd Cir.1978); *United States v. White*, 560 F.2d 787 (7th Cir.1977); and *United States v. Nickles*, 509 F.2d 810 (5th Cir.1975), are to the effect that extra verbiage is simply descriptive of amphetamine. The Pennsylvania rule expressed in *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979), and *Commonwealth v. Teada*, 235 Pa.Super. 438, 344 A.2d 682 (1975), is to the effect that potential for abuse associated with stimulant effect is something that must be proved.

Several cases follow the federal rule and several construe statutes identical to New Mexico's and Pennsylvania's. *People v. Hardin*, 149 Cal.App.3d 994, 197 Cal.Rptr. 194 (1983); *State v. Collinsworth*, 96 Idaho 910, 539 P.2d 263 (1975); *People v. Bolden*, 62 Ill.App.3d 1009, 20 Ill.Dec. 79, 379 N.E.2d 912 (1978); *People v. Busby*, 56 Mich.App. 389, 224 N.W.2d 322 (1974); *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976); *State v. Allesi*, 216 N.W.2d 805 (N.D.1974); *Doyle v. State*, 511 P.2d 1133 (Okla.Cr.App.1973); *State v. Johnson*, 254 N.W.2d 114 (S.D.1977); *Sheffield v. State*, 623 S.W.2d 403 (Tex.Cr.App. 1981).

It appears Pennsylvania stands alone in its interpretation of the language at issue. The rationale of the Pennsylvania courts is that the words "having a potential for abuse" must modify "any quantity"; otherwise, the words would be mere surplusage. *See Driscoll*. Further, doubts about the construction of a criminal statute should be resolved in favor of defendant. Defendant advances the same arguments here. The rationale of most of the courts that have followed the apparent federal rule is that the words "having a potential for abuse" modify "substance." This is true because of rules of grammar and the rule of construction that modifying language modifies near words rather than words more remote. *See Hardin; Collinsworth; Busby; Jennings*. Additionally, the reason for the modifying language is to provide guidance to the person authorized to add new drugs to the schedules; thus, the words are not surplusage. *See Picklesimer*. The state advances the same arguments here. Because of the rules of grammar and rule of construction, *see also In re Forfeiture of 1982 Ford Bronco*, 100 N.M. 577, 673 P.2d 1310 (1983), we hold that the federal rule is more persuasive.

Defendant argues that the effect of a ruling in favor of the state would be to ignore large portions of the rest of the statutory scheme. Defendant points out that Schedule III, Section 30-31-8, lists Schedule II drugs in limited quantities. Therefore, argues defendant, the state should have to prove that the drugs she transferred had a potential for abuse; otherwise, there would be no difference between Schedule II and Schedule III. Be that as it may, the section under which defendant was convicted applies equally to Schedule II or Schedule III drugs; it applies to controlled substances and only excludes narcotic drugs found in Schedules I and II. § 30-31-22. Of course, the latter exclusion has its own set of harsher penalties. NMSA 1978, § 30-31-20 (Repl.Pamp.

1980). One reason why the same drugs in different quantities may be found in different schedules is that record-keeping and other requirements differ between the schedules. *See* NMSA 1978, §§ 30–31–16 to –18 (Repl.Pamp.1980). The fact remains that illegally distributing any quantity of them is forbidden under the vast weight of authority from other jurisdictions. We adopt this rule.

We have considered defendant's other arguments and find them to be without merit.

Affirmed.

IT IS SO ORDERED.

ALARID, J., concurs.

BIVINS, J., concurring in part, dissenting in part.

BIVINS, Judge (concurring in part, dissenting in part).

I concur in the opinion as to all issues, except as to restitution. The majority, in affirming the trial court's authority to order defendant to pay the amount she charged for the drugs, relies on *State v. Taylor*, 104 N.M. 88, 717 P.2d 64 (Ct. App.1986). Because I disagree with *Taylor*, I disagree with the holding in this case.

Because authority to order restitution must be found under NMSA 1978, Section 31–17–1 (Repl.Pamp.1981) entitled "Victim restitution," and because that statute does not apply to the circumstances of this case, I would remand for resentencing, deleting the requirement that defendant make restitution to the state.

I first discuss why, in my opinion, *Taylor* was incorrectly decided as to the restitution issue, and then address the question whether the victim restitution statute applies to the facts of this case.

In *Taylor*, this court found it unnecessary to decide whether restitution was appropriate under Section 31–17–1(A), the specific victim restitution statute, because we held that restitution was proper under NMSA 1978, Section 31–20–6(F) (Cum. Supp.1985), the catch-all provision which gives the trial court power to impose condi-

tions reasonably related to rehabilitation when the trial court defers or suspends a sentence. This the court could not do. When the legislature has made a specific provision regarding a matter, that specific provision controls over another general provision. *State v. Ayala*, 95 N.M. 464, 623 P.2d 584 (Ct.App.1981). Here the victim restitution statute is specific; therefore, if restitution to the state is to be upheld, it must be found in that statute.

According to Section 31–17–1(A), a person is not a victim unless he has suffered actual damages. *State v. Griffin*, 100 N.M. 75, 665 P.2d 1166 (Ct.App.1983). "Actual damages" are "all damages which a victim could recover against the defendant in a civil action * * *." Section 31–17–1(A)(2).

The state is not a "victim" here; nor was the state a victim in *Taylor*. This statute was designed to compensate persons who experience a loss which directly stems from the crime, such as, those persons whose cars are stolen or whose homes are vandalized. *United States v. Vaughn*, 636 F.2d 921 (4th Cir.1980). The statute does not extend to awards of restitution to the state for costs it incurs in the investigation of crimes. *Id.; see United States v. Turner*, 628 F.2d 461 (5th Cir.1980); *United States v. Jimenez*, 600 F.2d 1172 (5th Cir.1979). We can hardly characterize investigatory expenses as "actual damages" when those expenses are provided for in law enforcement budgets.

While not relying on the victim restitution statute, *Taylor* cited to *State v. Pettit*, 73 Or.App. 510, 698 P.2d 1049 (1985). The facts, in *Pettit*, were similar to the facts here and in *Taylor*. Police officers bought cocaine from the defendant. The trial court later ordered the defendant to pay restitution to the department. The statute, in *Pettit*, is also similar to ours. A person was not a victim unless he had suffered pecuniary damages. In order to determine whether pecuniary damages could be awarded, the court had to determine first, whether there was a civil remedy available whereby the police department could recov-

er damages, and, second, whether that recovery would constitute special damages.

The *Pettit* court said that an appropriate civil recovery could be found in rescission and restitution. The parties had entered into an illegal contract. Because the parties, however, were not in *pari delicto*, the police department could repudiate the contract and recover any value, namely the money, which it had conferred on the defendant. Even though the goal of restitution is to return the parties to the *status. quo ante*, the court reasoned that the department was not required to return the cocaine to the defendant because the defendant had no legal right to possess contraband.

As to whether the award constituted special damages, the court, in *Pettit*, looked to the language of the statute which provided that special damages " 'shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed * * *.' " Because the money "taken" by the defendant was the "property" of the department, and only the equivalent, not the exact money, could be returned, the court concluded that the special damages requirement had been met.

While the analysis, in *Pettit*, is creative and has a certain appeal, I believe the court strained the statute beyond its intended purpose. Even if we were to acknowledge merit in this analysis when the only parties to the criminal transaction are the state and the defendant, the flaw in the court's reasoning is borne out when there are three actors in the crime—the defendant, the state, and the person who is actually victimized by the crime. In such a case, the actual damages would be measured by the loss the citizen victim had suffered. The governmental costs involved in investigating the crime would be too distinct and remote from the offense to be recovered also as "victim restitution." *See United States v. Vaughn.*

Absent a more specific legislative authorization, Section 31–20–6(F) should not be read to accomplish what Section 31–17–1(A) does not permit. *United States v. Vaughn.*

Accordingly, I respectfully dissent from that portion of the majority's opinion which awards to the state restitution from defendant.