[No. A020004. First Dist., Div. Three. May 12, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ANABERTA BETTY MATA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

## COUNSEL

Andrew H. Parnes, Nolan & Parnes and Berndt Ingo Brauer for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BARRY-DEAL, J.**—We hold that in a prosecution under former Health and Safety Code sections 11378.5 and 11379.5[1] for possession for sale and

---

[1]All further statutory references are to the Health and Safety Code unless otherwise indicated.

sale of phencyclidine (PCP) the People were not required to prove that the quantity or the substance itself had a potential for abuse associated with a depressant effect on the central nervous system.[2]

## I. *Procedural History*

An information filed February 1, 1982, charged appellants Anaberta Betty Mata and Anita M. Mata[3] with sale of PCP on November 4, 1981. (§ 11379.5.) The information was amended on August 17, 1982, to charge Anaberta Mata with possession for sale of PCP. (§ 11378.5.) After appellants' motions to dismiss the information and to suppress evidence (Pen. Code, §§ 995, 1538.5) were denied, they entered "slow pleas," submitting the matter to the court on the transcript of the preliminary hearing and exhibits. (See generally, *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086].)

The court found Anita Mata guilty of sale of PCP and Anaberta Mata not guilty of sale but guilty of possession for sale of PCP. On October 14, 1982, the court sentenced Anita Mata to imprisonment for the lower base term of three years. The court suspended imposition of sentence as to Anaberta Mata and placed her on three years' probation, with conditions including service of eleven months in jail. This appeal followed.

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## V. *Potential for Abuse*

The details of the underlying offenses are not relevant to the published portion of this opinion. The salient facts are that on two occasions Anita Mata, through a third party, sold a gram of PCP to an undercover officer. On a third occasion, in her home, with the help of her daughter, Anaberta Mata, she sold the officer an ounce of the drug for $2,800. A criminalist testified that the contraband which appellant Anita Mata sold was almost 100 percent pure.

---

[2] We dispose of other issues raised by appellant in an unpublished portion of this opinion.

[3] A third codefendant, Deborah Hetes, is not a party to this appeal.

*See footnote, *ante*, page 955.

At the time of Anita Mata's offense, section 11379.5 prohibited the sale of "any controlled substance which is specified in subdivision (e) of Section 11055 . . . ." The cited subdivision defined as being included in "Schedule II" "(e) Any material, compound, mixture, or preparation which contains any quantity of phencyclidine *having a potential for abuse associated with a depressant effect on the central nervous system.*" (§ 11055, subd. (e), italics added.) The issue before us is the meaning of the italicized phrase (for convenience sometimes shortened hereafter to "potential for abuse").[4]

■ Appellant Anita Mata contends that the effect of the quoted language was to require the prosecution to prove (1) that she sold "enough PCP . . . to have a depressant effect" and (2) that PCP "had that particular potential for abuse." ■ ■ ■ We find no California decisions directly in point,[5] but we conclude that neither claim has merit.

One California appellate decision considered an argument analogous to appellant Anita Mata's first point in a methamphetamine case. In *People* v. *Hardin* (1983) 149 Cal.App.3d 994 [197 Cal.Rptr. 194], defendant was charged with sale of methamphetamine in violation of sections 11055, subdivision (d)(3) (now subd. (d)(2)), and 11379. He had sold a bindle of what he represented to be "good crank" to an undercover officer for $120. A criminalist testified that the powder in the bindle weighed 757 milligrams and that it contained "more than half a percent" of methamphetamine by weight, which was, scientifically speaking, "a large amount." (*Hardin, supra,* at p. 996.)

---

[4]Section 11379.5 has been amended, so that it now prohibits the sale of "phencyclidine or any of its analogs which is specified in . . . paragraph (3) of subdivision (e) of Section 11055 . . . ." (Stats. 1985, ch. 3, § 7.)

Section 11055, subdivision (e), has also been amended and now provides in relevant part that included in schedule II are: "(e) Depressants . . . [which are defined as] any material, compound, mixture, or preparation which contains any quantity of the following substances *having a depressant effect on the central nervous system* . . . . (3) Phencyclidines . . . ." (Italics added.) (Stats. 1985, ch. 1098, § 1.4.)

Although the case at bench arose under the statutes as they formerly read, we note that our holding may provide guidance in the proper interpretation of the italicized portion of new section 11055.

[5]*People* v. *Camp* (1980) 104 Cal.App.3d 244 [163 Cal.Rptr. 510] held that the elements of possession of PCP were (1) dominion and control of the substance in (2) a usable quantity. (*Id.,* at pp. 247-248.) There the offense had occurred in December 1978, and at that time the statute contained the "potential for abuse" language. (§§ 11377, 11056, subd. (b)(8), as enacted Stats. 1976, ch. 1035, § 4, p. 4635.) Thus it might be inferred that *Camp* rejected appellant Anita Mata's position. However, the precise point was not raised, and it is axiomatic that a decision is not authority for propositions not considered. (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127-128, fn. 2 [89 Cal.Rptr. 601, 474 P.2d 417].)

On appeal, defendant Hardin raised our appellant Anita Mata's first point—that the prosecution was required to show "the amount of methamphetamine sold was enough to have a potential for abuse associated with a stimulant effect on the central nervous system." (*Id.*, at pp. 997-998.) The court rejected the claim for three reasons. First, the requirement that "usable quantity" be proven applies to simple possession cases, not to cases of sale. "'. . . Proof of the intentional sale of a dangerous drug is proof the quantity sold was "usable for sale." . . .'" (*Id.*, at p. 998, quoting *People* v. *Diamond* (1970) 10 Cal.App.3d 798, 800-801 [89 Cal.Rptr. 126].) Second, even if usable quantity is required, the fact the parties treated it as salable quantity is evidence that it was a usable quantity. (*People* v. *Hardin, supra,* 149 Cal.App.3d at p. 999.)

And third, the *Hardin* court rejected the contention based on a grammatical analysis of the statutory language in question. It read: "Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system . . . ." (§ 11055, subd. (d), as enacted Stats. 1980, ch. 1223, § 1, pp. 4141-4143.) Relying in part on a Michigan decision, the court held that ". . . the statute should be read: 'Any substance, regardless of quantity, which has a potential for abuse associated with a stimulant effect on the central nervous system.'" (*People* v. *Hardin, supra,* 149 Cal.App.3d at p. 1000.) The court concluded that the *quantity* of drug sold was irrelevant. (*Ibid.*)

Although it dealt with a different drug and a slightly differently worded statute, we find *Hardin* persuasive for the proposition that the quantity of PCP involved is not relevant in a prosecution for sale of the drug. This does not meet the heart of appellant Anita Mata's claim, however, which is that the potential for abuse of the substance must be shown.

Courts in other jurisdictions have directly confronted the question before us, and the vast majority, with which we agree, have rejected the position posed by Anita Mata. They have done so for a variety of reasons. One court simply found that "The plain language of the statute indicates that 'any material, compound, mixture or preparation' which contains phencyclidine is a controlled substance." (*People* v. *Otten* (1980) 91 Ill.App.3d 692, 696 [47 Ill.Dec. 106, 414 N.E.2d 1222, 1225].) Another found that the "potential for abuse" language "is not a definition of phencyclidine, but a description of a class of substances, and thus had no relevance to any issue in defendant's trial." (*People* v. *Oliver* (1979) 90 Mich.App. 144, 147 [282 N.W.2d 262, 264].)

The latter position, that the language is merely a "description of a class of substances," finds support when the original statutory scheme is examined. In adopting the Uniform Controlled Substances Act, from which our statute was taken, the Legislature listed various substances in several schedules and gave an administrative body the power to add substances to the lists. Thus, former section 11002.1 provided that the Division of Narcotic Enforcement could add new drugs to those enumerated. (Former § 11002.1, Stats. 1972, ch. 1377, § 21, pp. 2816-2817; see generally, 2 Witkin, Cal. Crimes (1963) § 680, p. 621.) The "potential for abuse" language therefore was included in the original statutes as an administrative guideline rather than as an element of any criminal offense. (*State* v. *Bureau* (1973) 8 Wash.App. 622, 625 [509 P.2d 105, 108].) The fact that the statute was amended to eliminate this administrative prerogative may have rendered the language superfluous, but it did not change the definition of any offense.[6] "[T]he weight of the authority is that the unauthorized delivery of any quantity of the controlled substance [PCP] constitutes a violation of the Act. [Citations.]" (*People* v. *Bolden* (1978) 62 Ill.App.3d 1009, 1010 [20 Ill.Dec. 79, 379 N.E.2d 912, 914]; contra, *Commonwealth* v. *Teada* (1975) 235 Pa.Super. 438 [344 A.2d 682].)

We are convinced that the view expressed in these decisions is correct and is in keeping with the purpose of the Uniform Controlled Substances Act, which "unequivocally manifests a legislative intent to restrict the transportation, sale and possession of controlled substances so as to protect the health and safety of all persons within this state. [Citations.]" (*People* v. *Aston* (1985) 39 Cal.3d 481, 490 [216 Cal.Rptr. 771, 703 P.2d 111].)

Accordingly, we hold that in prosecutions involving PCP the People are not required to prove that the quantity or the substance itself has "a potential for abuse associated with a depressant effect on the central nervous system." ■ "Any other conclusion would 'contravene the settled rule of statutory construction that "Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity." [Citation.]' (*People* v. *Clark* [1966] 241 Cal.App.2d [775] at p. 780 [51 Cal.Rptr. 7].)" (*People* v. *Aston, supra,* 39 Cal.3d at p. 492.)

---

[6]It is noteworthy that in its 1985 revision of section 11055, the Legislature reintroduced the concept of having additional drugs added to the schedule by nonlegislative authority. The Attorney General is now authorized to add "additional analogs of phencyclidine" to schedule II, the addition to be effective until the next legislative session.

The judgments are affirmed.

White, P. J., and Scott, J., concurred.

The petition of appellant Anita Mata for review by the Supreme Court was denied July 30, 1986.