905 P.2d 747

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Rick ELLIS, Defendant–Appellant.**

**No. 16116.**

Court of Appeals of New Mexico.

Sept. 27, 1995.

Certiorari Denied Nov. 9, 1995.

**710**

Tom Udall, Attorney General and William McEuen, Ass't Attorney General, Santa Fe, for Plaintiff–Appellee.

William J. Friedman, Albuquerque, for Defendant–Appellant.

## OPINION

APODACA, Chief Judge.

Rick Ellis (Defendant) appeals the trial court's restitution order entered after Defendant's guilty plea to two misdemeanors— attempted tampering with evidence and embezzlement. Defendant raises two issues on appeal. First, he challenges the trial court's authority to enter its restitution order under NMSA 1978, Section 31–17–1 (Repl. Pamp.1994). This challenge is two-fold—Defendant argues that: (1) the two misdemeanor crimes he was convicted of cannot be a predicate for requiring restitution under Section 31–17–1 because of the absence of the required causal relationship between Defendant's conduct underlying the two convictions and the damages incurred by the victim; and (2) the State[1] is not a "victim" as that term is used in Section 31–17–1. Second, Defendant contends that, assuming the trial court had the authority to order restitution under Section 31–17–1, the court abused its discretion concerning the amount of restitution. We hold that the trial court did not: (1) err in determining that the two crimes Defendant was convicted of properly formed the basis for the trial court's restitution order

under Section 31–17–1; (2) err in determining that the police department (the Department) of the City of Clovis, a municipality, which is a political subdivision of the State, was a victim entitled to restitution under Section 31–17–1; and (3) abuse its discretion in arriving at the amount of restitution. We therefore affirm.

## I. BACKGROUND

Defendant was an undercover narcotics officer of the Department. As such, Defendant made approximately forty-five controlled substance purchases. Sometime during these purchases, the Department became aware that Defendant was allegedly "stealing" some of the drugs he obtained during his undercover purchases. This information eventually led to the original criminal charges for which Defendant was indicted.

At the sentencing hearing, the State requested restitution, claiming that the Department had lost a considerable amount of money as a result of the State's inability to prosecute the undercover cases on which Defendant had worked. Specifically, the State argued that, because of the indictment against Defendant, it was required to dismiss the cases on which Defendant was to be a material witness. The State requested restitution in the amount of $7,640.22, which represented $2,114.00 paid to Defendant as salary, $1,766.22 paid to Defendant as expense money required to "get close" to drug dealers, and $3,770.00 spent for the actual purchase of drugs. Defendant, on the other hand, argued that restitution should be limited to $211.00, a sum representing the actual amount embezzled.

The trial court, upon entering its judgment and sentence, ordered Defendant to pay $7,640.22 in restitution to the Department. In so doing, the trial court determined that, under the authority of Section 31–17–1 and *State v. Madril,* 105 N.M. 396, 733 P.2d 365 (Ct.App.1987), which the trial court believed controlled the question before it, there was a sufficient causal link between Defendant's criminal activities, as defined in Section 31–

---

**1.** Although Defendant refers to the victim in his briefs as the "State," it is clear from the record, Defendant's arguments, and the State's argu-

ments, that the trial court ordered restitution to be made to the City of Clovis Police Department.

17–1, and the Department's claimed damages or losses.

## II. DISCUSSION

### A. The Trial Court's Authority To Order Restitution Under Section 31–17–1

Relying on Section 31–17–1, Defendant first argues that the "general rule" in New Mexico and other jurisdictions "is that restitution may be ordered solely to compensate for the harm caused by the conduct forming the factual basis of the crime of conviction." Second, Defendant claims that funds voluntarily expended by the Department, such as the sums comprising the $7,640.22 Defendant was ordered to pay, are not losses or damages of a "victim" as contemplated by Section 31–17–1 or New Mexico case law. We shall consider each of these arguments separately, discussing Defendant's second argument first.

#### 1. Was The Department A Victim Under Section 31–17–1?

"It is the policy of this state that restitution be made by each violator of the Criminal Code to the victims of his criminal activities...." Section 31–17–1(A). "Victim" is defined as "any person who has suffered actual damages as a result of the defendant's criminal activities." Section 31–17–1(A)(1). Defendant argues that the Department does not qualify as a "person" under Section 31–17–1(A)(1)'s definition of "victim." Because the Department is not a person, Defendant argues, it cannot be a victim under the statute, and restitution therefore could not be ordered. We disagree.

■ In *State v. Griffin,* 100 N.M. 75, 77, 665 P.2d 1166, 1168 (Ct.App.1983), this Court directly addressed the meaning of "person" as used in Section 31–17–1. *Griffin* unequivocally held that the definition of "person" in Section 31–17–1 was the same as the definition of "person" appearing in the general provisions of the Criminal Code, specifically, in NMSA 1978, Section 30–1–12(E) (Repl. Pamp.1994). Section 30–1–12(E) defines "person" as "any human being or legal entity, whether incorporated or unincorporated, including the United States, the state of New Mexico or any subdivision thereof." Municipal corporations, such as the City of Clovis,

of which the Department is a part, are political subdivisions of the state. *See City of Albuquerque v. Campbell,* 68 N.M. 75, 79, 358 P.2d 698, 701 (1960). As a political subdivision of the state, the Department is a person under Section 30–1–12(E) and therefore is a person under Section 31–1–17.

Nevertheless, Defendant contends that, "for purposes of this appeal, the general definition of 'person' appearing in the criminal code is overbroad ... and cannot prevail over the specific definition of victim appearing in [Section 31–17–1] and achieve indirectly what is forbidden directly." We disagree. Defendant's generalized argument, without citation to authority, does not persuade us that *Griffin's* definition of "person" is not applicable to this appeal. *See* SCRA 1986, 12–213(A)(3) (brief-in-chief shall "contain the contentions of the appellant with respect to each issue presented and how preserved in the court below, *with citations to authorities* and parts of the record proper") (emphasis added); *Roselli v. Rio Communities Serv. Station, Inc.,* 109 N.M. 509, 512, 787 P.2d 428, 431 (1990) (issue briefed without cited authority will not be reviewed); *Fenner v. Fenner,* 106 N.M. 36, 41–42, 738 P.2d 908, 913–14 (Ct.App.) (commenting that this Court will not review issues unsupported by cited authority), *cert. denied,* 106 N.M. 7, 738 P.2d 125 (1987).

Defendant also argues that a political subdivision of the state cannot recover restitution under Section 31–17–1 for a voluntary expenditure of public funds previously budgeted, because such expenditures cannot be considered damages under the statute. In support of this argument, Defendant relies on numerous cases from other jurisdictions. In light of this Court's holding in *Griffin* that a state agency can recover restitution as a victim under Section 31–17–1, and our discussion below, we conclude that the cases from other jurisdictions are unpersuasive. Defendant's proposal is unworkable within our state's statutory framework, as clearly interpreted by our case law.

#### 2. Did The Department's Losses Qualify As Actual Damages Under Section 31–17–1?

■ We agree with Defendant that, under *Madril,* restitution pursuant to Section 31–

17–1 is limited by, and directly related to, a defendant's criminal activities as defined in that statute. Section 31–17–1(A)(3) defines "criminal activities" to include "any crime for which there is a plea of guilty or verdict of guilty, upon which a judgment may be rendered and any other crime ... [that] is admitted or not contested by the defendant." This language clearly focuses the conduct for which a defendant may be ordered to pay restitution to only the specific offenses of which the defendant has been convicted.

Consequently, we agree with Defendant that the trial court below, and this Court as a reviewing court, must consider only the two misdemeanor charges to which Defendant pled guilty as a predicate to requiring Defendant to pay restitution. We agree with Defendant that *Madril* reinforced this limitation by stating that the provisions of Section 31–17–1 required "a direct, causal relationship between the criminal activities of a defendant and the damages [that] the victim suffers." *Madril*, 105 N.M. at 397, 733 P.2d at 366. *Madril* expressly held that "[r]estitution must be limited by and directly related to those criminal activities." *Id.*

In addition to his principal reliance on *Madril*, Defendant also relies on *State v. Taylor*, 104 N.M. 88, 717 P.2d 64 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986), and *State v. Hernandez*, 104 N.M. 97, 717 P.2d 73 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986). Neither *Taylor* nor *Hernandez*, however, considered it necessary to focus their attention on Section 31–17–1. Instead, those cases upheld the restitution orders entered by the trial courts in those cases by relying on NMSA 1978, Section 31–20–6(F) (Cum.Supp.1985), and held that, under that particular statute, the trial court possessed a broad discretion to order restitution as a *condition of probation*, irrespective of Section 31–17–1. *Taylor* and *Hernandez* thus upheld the respective restitution orders under Section 31–20–6(F), not Section 31–17–1.

Unlike *Taylor* and *Hernandez*, which upheld the restitution orders as a condition of probation under Section 31–20–6(F), we instead apply the special restitution provisions of Section 31–17–1. Doing so, we conclude that the trial court had the authority to order restitution under this more specific statute.

We thus refocus our attention to Section 31–17–1. The section first defines "victim" as "any person who has suffered actual damages as a result of the defendant's criminal activities." Section 31–17–1(A)(1). We have previously noted the statute's definition of "criminal activities" and concluded that restitution must encompass only those damages that are directly caused by the specific conduct defining the crimes of conviction. The statute next defines "actual damages" as "all damages [that] a victim could recover against the defendant *in a civil action arising out of the same facts or event.*" Section 31–17–1(A)(2) (emphasis added). From a review of these provisions, then, it should be fairly obvious that the criminal activities relevant to this appeal are only the two convictions for attempted tampering with evidence and the embezzlement. We believe that these two convictions are the "facts or event" referred to in Section 31–17–1's definition of actual damages.

Having determined that the Department is indeed a "person" and thus qualifies as a "victim," and that restitution must be confined to the two criminal charges to which Defendant pled guilty, we must next ask ourselves the hypothetical question implicitly contained in the statute's definition of actual damages—What damages could the Department recover in a civil action against Defendant arising from the two criminal charges relevant to this appeal? This is essentially the same question the trial court was required to ask itself in determining the amount of restitution that could be ordered under Section 31–17–1. Were the losses totaling $7,640.22 reasonably foreseeable by Defendant as resulting from the two crimes to which he pled guilty? We believe the trial court could so determine.

The Department contracted with Defendant for Defendant to perform certain undercover services, in consideration of certain commissions or salary. Undoubtedly, the trial court could have determined that Defendant knew the Department was depending on his undercover operations to result in a number of indictments or criminal charges

brought against alleged drug traffickers. Equally important, Defendant's testimony would undoubtedly be required at various criminal proceedings. With Defendant having elected to commit the two relevant crimes, was it not reasonably foreseeable that such conduct or actions would jeopardize the eventual criminal charges and possible convictions of those charged with criminal activity? We believe that the trial court could have so concluded, thus permitting it to order restitution from Defendant.

The only portion of the restitution amount of $7,640.22 that gives us some pause is the amount of $2,114.00 the Department paid to Defendant as commissions or salary. After careful review of this particular aspect of the case, however, we believe this amount could be assessed against Defendant under Section 31–17–1.

We draw upon a hypothetical scenario to address Defendant's argument on this point. Let us assume that a bookkeeper has been in the employ of an employer for a number of years, at an agreed-upon salary. During the course of one year, the employer discovers that the bookkeeper has embezzled a considerable amount of money. Eventually, charges are brought against the bookkeeper, and a plea of guilty is entered. Can one predict, with reasonable certainty, that the trial court in our hypothetical situation could properly order restitution of the entire amount embezzled under the authority of Section 31–17–1? We believe so. On the other hand, could the trial court properly order restitution for an amount representing the total salary paid to the bookkeeper during the period of embezzlement? We believe not because, notwithstanding the embezzlement and the loss to the employer of the embezzled amount, the employer received what it had bargained for—the bookkeeping services of the bookkeeper. These services were indeed provided and undoubtedly were of some value to the employer, irrespective of the embezzlement.

Why then, should Defendant in this appeal not stand in the same footing as our hypothetical bookkeeper? Because, we believe, the trial court could reasonably conclude that the Department in this case, having paid a salary to Defendant, did not obtain the benefit of the employment contract. Defendant was paid by the Department to make contacts with suspected drug traffickers that would ultimately lead to criminal charges and, hopefully, convictions. As a result of Defendant's conduct, there were no criminal charges brought and no indictments returned, much less convictions, against any suspected drug dealers. The trial court could reasonably conclude, then, that the salary paid to Defendant, unlike that paid to the bookkeeper in our hypothetical case, was completely lost to the Department. The purpose of paying a salary was to obtain eventual indictments and convictions. The trial court could properly determine that none were forthcoming as a direct result of Defendant's criminal conduct. Consequently, it was not error for the trial court to include the salary amount as a part of the restitution.

### B. Amount Of Restitution—Was It An Abuse Of Discretion?

Defendant contends that, in the event we determine that the trial court had authority to order restitution under Section 31–17–1, the court nevertheless abused its discretion in the amount of restitution it imposed. In support of this argument, Defendant relies on *State v. Donaldson,* 100 N.M. 111, 666 P.2d 1258 (Ct.App.), *cert. denied,* 100 N.M. 53, 665 P.2d 809 (1983), which set forth the same criteria considered by *Taylor* in determining whether restitution ordered as a condition of probation under Section 31–20–6(F) should be set aside. Both *Donaldson* and *Taylor* are distinguishable on this particular issue because they were concerned with conditions of probation under Section 31–20–6(F), and not with the more specific provisions of the restitution statute at issue here—Section 31–17–1. Having previously determined that the trial court's order of restitution was proper and authorized under Section 31–17–1, it would be difficult, if not contradictory, for us to conclude that the trial court's action was an abuse of discretion. We therefore decline to do so.

### III. CONCLUSION

In summary, we conclude that the trial court did not err in determining that the

required causal connection existed between the actions underlying Defendant's two convictions and the damages incurred by the Department. We also conclude that the trial court did not err in determining that the Department was a victim entitled to restitution under Section 31–17–1. We therefore hold that the trial court had the authority to enter its restitution order under Section 31–17–1 and did not abuse its discretion in doing so. We thus affirm the trial court's order of restitution.

IT IS SO ORDERED.

ALARID, J., concurs.

BUSTAMANTE, J., concurs in part and dissents in part, and files opinion.

BUSTAMANTE, Judge (dissenting.)

I agree with the majority opinion on all points except inclusion of Defendant's wages in the restitution order. I cannot agree that wages paid Defendant can be deemed "actual damages" under NMSA Section 31–17–1(A)(2) (Repl.Pamp.1994).

Defendant pleaded guilty to two misdemeanor charges—one count of attempted tampering with evidence and one count of misdemeanor embezzlement in the sum of $211. Defendant apparently attempted to convert to his own use some of the drugs he purchased as an undercover officer, and he apparently used some of the "buy" money for personal expenses.

Section 31–17–1(A)(2) defines "actual damages" as all damages which a victim could recover against the Defendant in a civil action arising out of the same facts or events. In *State v. Madril*, 105 N.M. 396, 733 P.2d 365 (Ct.App.1987), we made it clear that restitution must be limited by and directly related to the criminal activities of which a defendant is found guilty or to which a defendant pleads guilty.

I agree that the funds given to Defendant as expense money and the amounts actually spent for purchase of drugs are properly subject to restitution. We cannot say that the trial court clearly erred when it concurred that the State could not reasonably proceed with the prosecutions potentially arising from Defendant's drug purchases. On a common sense level, the money spent by Defendant in the drug purchase program was wasted, and the waste can be said to flow directly from Defendant's criminal activities.

The same cannot be said for Defendant's wages. Defendant's wages were paid pursuant to his employment contract. The employment contract itself can in no way be deemed to flow from the commission of Defendant's crime. The fact that the value of Defendant's employment was compromised is not sufficient for me to conclude that restitution is appropriate. Defendant's employment, and thus his wages, is one step removed from the direct causal relationship required by *Madril*.

THEREFORE, I respectfully dissent in part.