**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2020-NMCA-039**

**Filing Date: May 4, 2020**

**No. A-1-CA-37544**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**NATISHA GEORGE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Released for Publication October 6, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**B. ZAMORA, Judge.**

**{1}**     Defendant Natisha George appeals a restitution order included as part of her sentence, imposed following her guilty plea to the offense of forgery, contrary to NMSA 1978, Section 30-16-10(A)(1) (2006). She contends the order requiring her to pay restitution for the costs of her extradition from New York was not authorized by statute and was not supported by substantial evidence. We agree and hold the order requiring Defendant to pay restitution was not authorized by law. We reverse.

**Background**

**{2}**    The material facts are not in dispute. On September 12, 2010, Defendant was arrested for shoplifting and issued a citation, on which she signed her sister's name instead of her own. Defendant's sister discovered the forgery when she was pulled over for speeding in 2014, and a criminal complaint and warrant were issued against Defendant for theft of identity, concealing identity, and forgery. Sometime thereafter, Defendant moved to New York to live with her father. Officers from the San Juan County Sheriff's Department (the Department) extradited Defendant and returned her to New Mexico on May 9, 2018. Defendant was held in detention until May 21, 2018, when she pled guilty to one count of forgery. The district court ordered that she be conditionally released, subject to unsupervised probation for eighteen months. The court also ordered Defendant to pay a $100 fee to the San Juan County Crimestoppers Program and to pay the Department extradition costs of $2,131.57 as restitution, pursuant to NMSA 1978, Section 31-17-1 (2005). This appeal followed.

**The District Court Erred When It Ordered Defendant to Pay Restitution for Extradition Costs**

**{3}**    The sole issue on appeal is the lawfulness of the order requiring Defendant to pay restitution. Defendant argues the order compelling her to pay restitution is not authorized by Section 31-17-1 (the victim restitution statute) because the Department is not a "victim" as contemplated by the statute, and there is no direct causal relationship between Defendant's criminal activities and the extradition costs incurred by the Department. Defendant also contends the State failed to establish an adequate evidentiary basis for the amount of the restitution award. The State counters that restitution of extradition costs is authorized under the victim restitution statute and, even if it is not, it is authorized as a condition of probation, pursuant to NMSA 1978, Section 31-20-6 (2007) (the sentencing statute), or as a cost of conviction, pursuant to NMSA 1978, Section 31-12-6 (1972). The State further contends Defendant waived any challenge to the amount of the award by failing to contest it below.

**{4}**    We review sentencing decisions, including orders of restitution, for an abuse of discretion. *See State v. Lack*, 1982-NMCA-111, ¶ 23, 98 N.M. 500, 650 P.2d 22 (stating that "restitution to the victim must be considered part of the sentencing process[,]" and "sentencing involves the proper application of sound judicial discretion"). "[A] trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380. However, we review the district court's interpretation of the relevant statutes de novo. *See State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

**I.    The Victim Restitution Statute (Section 31-17-1)**

**{5}**    The victim restitution statute provides that "[i]t is the policy of this state that restitution be made by each violator of the Criminal Code . . . to the victims of his criminal activities to the extent that the defendant is reasonably able to do so." Section

31-17-1(A). A "victim" is "any person who has suffered actual damages as a result of the defendant's criminal activities[,]" and "actual damages" are those "damages which a victim could recover against the defendant in a civil action arising out of the same facts or event [.]" Section 31-17-1(A)(1),(2). The purpose of the victim restitution statute is "to make whole the victim of the crime to the extent possible." *Lack*, 1982-NMCA-111, ¶ 12.

{6}     As a preliminary matter, we recognize that there may appear to be some tension arising from our previous decisions concerning whether the State can be defined as a victim for purposes of the victim restitution statute. In *State v. Ellis*, this Court affirmed a sentence ordering the defendant to pay restitution to a police department for expenses the department incurred in employing the defendant as an undercover officer, expressly holding that a law enforcement agency can constitute a victim entitled to restitution under the victim restitution statute. 1995-NMCA-124, ¶¶ 15-19, 120 N.M. 709, 905 P.2d 747. Yet, in *State v. Dean*, we stated that "[u]nder the statute, the state is not a victim, and compensating the state does not further the purpose of victim restitution." 1986-NMCA-093, ¶ 17, 105 N.M. 5, 727 P.2d 944.

{7}     A closer examination of these authorities makes clear that whether or not a law enforcement agency may be considered a "victim" under Section 31-17-1 depends in part on the damages the agency claims as restitution. In *Dean*, the defendant was convicted of trafficking in cocaine and was ordered to pay restitution to a police contingency fund. 1986-NMCA-093, ¶¶ 1, 13. Concluding that "the state is not a victim," *id.* ¶ 17, this Court endorsed language from Judge Bivens' dissenting opinion in *State v. Hernandez* that "the state [wa]s not a 'victim' *here*[,]" because the damages it claimed were costs of investigation, not losses attributable to the defendant's crime. 1986-NMCA-017, ¶ 26, 104 N.M. 97, 717 P.2d 73 (Bivens, J., concurring in part, dissenting in part) (emphasis added). The facts in *Dean* were similar; the restitution order in that case sought recovery of costs associated with investigating the defendant's crime. *See* 1986-NMCA-093, ¶ 13 (noting that the court ordered a defendant convicted of a narcotics offense to pay an amount equal to that paid by an undercover police officer to the defendant in purchase of cocaine). By contrast, the restitution order in *Ellis* was crafted not to restore the costs of investigating the defendant, but to compensate the police department for damage to other investigations and for the lost benefit of the defendant's employment contract with the department—losses that we concluded were directly attributable to the defendant's criminal activities and which could plausibly be recovered in a civil action. *See* 1995-NMCA-124, ¶¶ 15-19 (concluding that a police department's losses stemming from the defendant's embezzlement and tampering with evidence could be recovered in a civil action).

{8}     In short, *Ellis* and *Dean* simply reaffirm the rule announced in *Madril* that, for a restitution order to be authorized under Section 31-17-1, there must be a "direct, causal connection between the criminal activities of a defendant and the damages which the victim suffers." *Madril*, 1987-NMCA-010, ¶ 6. In *Madril*, this Court struck down an order requiring the defendant to pay restitution for property stolen in a burglary because the defendant pled guilty only to receiving stolen property, not to burglary. *Id.* ¶ 8. Having returned the property she unlawfully received, we held the defendant could not be

required to pay restitution for the value of the other property taken in the burglary because she denied involvement in, and was never charged with, that offense. *Id.* Accordingly, *Madril* instructs that, in evaluating the lawfulness of a restitution order there must be a direct relationship between the "crime for which there is a plea of guilty or a verdict of guilty," and the damages asserted by the victim. *Id.* ¶ 6.

**{9}** Here, Defendant pled guilty to forging her sister's name to a citation for shoplifting. The extradition costs claimed by the Department bear, at best, an indirect relationship to this offense. Certainly, had Defendant not committed forgery and subsequently moved to New York, the Department would have had no cause to seek her extradition. But the Department's extradition expenses were caused by Defendant's relocation to New York, not her forging her sister's name to the shoplifting citation. Had Defendant left the state to avoid prosecution, we would be faced with a different question. However, there is nothing in the record to suggest that Defendant traveled to New York for any reason other than to live with her father. Because there is no direct, causal relationship between the crime Defendant pled guilty to and the damages sought by the Department, the restitution order is not authorized by Section 31-17-1.

## II.     The Sentencing Statute (Section 31-20-6)

**{10}** While the restitution order at issue in this case was expressly imposed pursuant to Section 31-17-1, the State is correct that we must affirm the district court's sentencing decision if it is "right for any reason." *See State v. Mendoza*, 1993-NMCA-027, ¶ 10, 115 N.M. 772, 858 P.2d 860 (stating that a proper sentence will be upheld even if imposed based on an erroneous conclusion of law). We therefore next consider the State's contention that the restitution award in this case could have been authorized by Section 31-20-6 (the sentencing probation statute).

**{11}** When a district court orders a sentence deferred or suspended, it may impose such conditions of probation "as it may deem necessary to ensure that the defendant will observe [the law]." Section 31-20-6. While the probation statute expressly authorizes the court to impose a variety of conditions, the only provision that arguably applies here is Subsection F, which permits the court to impose any "conditions reasonably related to the defendant's rehabilitation." Section 31-20-6(F).

**{12}** District courts have discretion to "consider a wide range of options to assure [the] defendant's rehabilitation," and we have recognized that repayment of costs incurred by the state may, under certain circumstances, serve a rehabilitative purpose. *State v. Taylor*, 1986-NMCA-011, ¶ 36, 104 N.M. 88, 717 P.2d 64. However, "to be reasonably related to rehabilitation, the probation condition must be relevant to the offense for which probation was granted." *State v. Holland*, 1978-NMCA-008, ¶ 9, 91 N.M. 386, 574 P.2d 605. In *Taylor*, 1986-NMCA-011, ¶ 36 we upheld an order for restitution as a condition of probation where the order required the defendant to repay money he received in the drug transaction that formed the basis of his conviction.

**{13}**     Unlike the order at issue in *Taylor*, the restitution order here is unrelated to the offense to which Defendant pled guilty. *See State v. Ayala*, 1981-NMCA-008, ¶ 5, 95 N.M. 464, 623 P.2d 584 (holding that the probation statute did not authorize an order requiring a defendant convicted of aggravated battery to pay jury and bailiff costs as "conditions reasonably related to rehabilitation" because such costs were not relevant to the offense of aggravated battery). We fail to see how ordering the Defendant to repay the costs of her extradition is "designed to protect the public against the commission of other [forgery] offenses during the term [of a defendant's probation]" or has "as [its] objective the deterrence of future misconduct." *State v. Donaldson*, 1983-NMCA-064, ¶ 33, 100 N.M. 111, 666 P.2d 1258; *see Holland*, 1978-NMCA-008, ¶¶ 9-10 (holding that a fine imposed upon the defendant for traffic offenses committed as a juvenile was not authorized as a condition of probation because "the fine was not relevant to the cocaine offense" to which the defendant pled guilty and was therefore not reasonably related to his rehabilitation); *cf. State v. Gardner*, 1980-NMCA-122, ¶ 19, 95 N.M. 171, 619 P.2d 847 (upholding an order requiring the defendant to submit to search upon request as a proper condition of probation because it was reasonably related to the defendant's narcotics conviction and "aimed at deterring or discovering subsequent criminal offenses").

**{14}**     Because the order to pay extradition costs was not reasonably related to a proper rehabilitative purpose, it could not have been authorized by the court pursuant to Section 31-20-6. *See State v. Dominguez*, 1993-NMCA-042, ¶ 48, 115 N.M. 445, 853 P.2d 147 (holding that it was not proper to order the defendant to make a contribution to the sheriff's office as a condition of probation because "the [s]heriff's [o]ffice was unaggrieved by [the defendant's] actions").

### III.     The Costs of Prosecution Statute (Section 31-12-6)

**{15}**     Finally, we address the State's contention that the restitution order could have been authorized as a cost of prosecution. *See* § 31-12-6 (providing that "[i]n every case wherein there is a conviction, the costs may be adjudged against the defendant"). The "assessment of costs in criminal cases is a statutory creation, unknown at common law" and thus must be authorized by statute. *Ayala*, 1981-NMCA-008, ¶ 9 (alteration, internal quotation marks, and citation omitted). We strictly construe such statutes because assessments are punitive in nature. *State v. Valley Villa Nursing Ctr.*, 1981-NMCA-133, ¶ 6, 97 N.M. 161, 637 P.2d 843.

**{16}**     While Section 31-12-6 does not specify which costs may be assessed against a defendant, it is settled law that such costs cannot include the "general expense of maintaining a system of courts and the administration of justice." *Ayala*, 1981-NMCA-008, ¶ 12 (internal quotation marks and citation omitted). We have previously held that jury costs, bailiff costs, and the costs of convening a grand jury are not recoverable under the statute. *Id.* ¶¶ 12-16; *Valley Villa*, 1981-NMCA-133, ¶ 6. Moreover, "the [s]tate's costs in investigation and preparation of criminal charges" constitute general expenses that are not recoverable under Section 31-12-6. *State v. Padilla*, 1982-NMCA-100, ¶ 21, 98 N.M. 349, 648 P.2d 807.

**{17}** The State contends that the extradition costs at issue here are not general expenses but are "unusual" costs of prosecution that may be recovered under the statute, pursuant to *City of Portales v. Bell*, 1963-NMSC-072, ¶ 11, 72 N.M. 80, 380 P.2d 826 and *Valley Villa*, 1981-NMCA-133, ¶ 9. In *Bell*, our Supreme Court held that the district court did not abuse its discretion in assessing costs against the defendant incurred by a county as a result of having a nonresident judge try the defendant's case, even though such costs were not expressly authorized by Section 31-12-6. *Bell*, 1963-NMSC-072, ¶ 11. In so holding, our Supreme Court emphasized that the costs at issue had "a direct relation to the case being tried" and were "incident[al] to the trial of the case itself." *Id*. Instead of applying this standard, however, the State contends that *Valley Villa* "described the costs properly assessable under the . . . *Bell* rationale as 'unusual costs' incurred in connection with [this] case." The State then invites us to uphold the assessment of extradition costs in this case because they are not "typical in every criminal prosecution by the State." We decline to do so.

**{18}** First, the State misreads our opinion in *Valley Villa*. In that case, far from endorsing the rationale of *Bell*, we expressly called the costs into question. *See Valley Villa*, 1981-NMCA-133, ¶ 10 (stating "[w]e have difficulty . . . with the reasoning . . . in [*Bell*]," and asking '[w]hy should 'direct relation' costs be assessable in the absence of legislative authorization?"). This Court also expressed skepticism about whether the rarity of an expense should be considered when determining whether its assessment was authorized by statute. *Id.* (asking, "Why should . . . a little used . . . method for instituting criminal charges . . . justify the assessment of costs in the absence of legislative authorization for such costs?").

**{19}** Second, even if the proper inquiry under *Bell* is whether an assessed cost is "unusual," the State has offered no authority in support of its assertion that "general costs of maintaining the system of courts and the administration of justice are those of a type that are typical in *every criminal prosecution by the State*" and, therefore, extradition costs cannot constitute general expenses. (Emphasis added.) This Court will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs., Inc. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969. Nor has the State pointed to any evidence in the record indicating how unusual extradition costs are. "The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted).

**{20}** We think there is little to distinguish extradition costs from the kinds of expenses required to administer a system of justice that have been excluded from recovery under Section 31-12-6. To the contrary, extradition bears a close resemblance to the kinds of investigatory and pre-prosecution practices that were deemed non-recoverable in *Valley Villa* and *Padilla*. *See Valley Villa*, 1981-NMCA-133, ¶¶ 12-14 (finding costs of grand jury proceedings not recoverable under Section 31-12-6); *see also Padilla*, 1982-NMCA-100, ¶ 21 (stating that "the [s]tate's costs in investigation and preparation of criminal charges would fall into the same category of general expense"). At the very least, because there was no trial in this matter, the extradition costs imposed here cannot be

deemed "incident[al] to the trial of the case itself." *Bell*, 1963-NMSC-072, ¶ 11. Accordingly, we find that the assessment of extradition costs against Defendant is not authorized by Section 31-12-6.

**{21}** Because we have determined the restitution order was not authorized by statute, we need not consider Defendant's additional argument that the State failed to establish an adequate evidentiary basis for the amount of the award.

**CONCLUSION**

**{22}** For the foregoing reasons, we reverse that portion of Defendant's sentence requiring her to pay restitution in the amount of the Department's costs of extradition.

**{23}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**