The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>May 4, 2022</u>

**No. A-1-CA-38754**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ANTONIO QUINTERO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren Joseph Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# OPINION

**IVES, Judge.**

{1}    In these consolidated appeals, Defendant Antonio Quintero challenges two orders of restitution that the district court issued in two different cases.[1] Pursuant to plea agreements, Defendant pleaded no contest to false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963), with intent to commit a sex offense against the victims. *See* NMSA 1978, § 29-11A-3(I)(7) (2013) (defining "sex offense" to include false imprisonment "when committed with the intent to inflict a sexual offense"). The district court ordered Defendant to pay restitution as compensation for, in one case, costs associated with difficulty the victim experienced completing part of her high school education and, in the other, mental-health care the victim had received. Defendant argues that we should reverse both orders because (1) they are contrary to the victim restitution statute, NMSA 1978, § 31-17-1 (2005), in that they compel him to pay restitution relating to or resulting from mental anguish; and (2) the relationship between his conduct and the harms for which compensation was ordered is too attenuated to establish causation. We hold that (1) the district court ordered restitution as compensation for pecuniary losses, not to compensate the victims for their mental anguish, and thus did not act contrary to Section 31-17-1;

---

[1]*See State v. Antonio Quintero*, No. D-307-CR-2018-00542 (3rd Jud. Dist. May 29, 2020); *State v. Antonio Quintero*, No. D-307-CR-2018-01110 (3rd Jud. Dist. May 29, 2020).

and (2) substantial evidence supports the district court's factual findings on causation. We therefore affirm both restitution orders.

**BACKGROUND**

{2}	In 2018, the State accused Defendant of having committed criminal sexual contact of a minor against E.R. and, in a separate case, accused Defendant of having twice committed criminal sexual contact of a minor against R.S., as well as intimidating or threatening her in relation to her possible testimony against him. Defendant pleaded no contest, in each case, to one count of false imprisonment with intent to commit a sexual offense against the victim. At Defendant's plea hearing, the district court accepted the State's proffer that in 2010, when E.R. was ten years old, Defendant had restrained her while intending to cause her to touch his penis. The court also accepted the State's proffer that in 2013, when R.S. was eight years old, Defendant had restrained her while intending to touch her vulva. Pursuant to his no-contest pleas, Defendant was convicted, in each case, of one count of false imprisonment with intent to commit a sexual offense against the victim.

{3}	In both cases, Defendant "agree[d] to make restitution on all charges whether or not dismissed or not filed pursuant to [the plea] agreement." Defendant thus agreed to pay restitution for sexually abusing and falsely imprisoning both victims and for intimidating or threatening R.S. At the State's request, the district court held a restitution hearing to review the restitution plan in each case. The district court

approved both plans and ordered Defendant to pay (1) $609.78 to E.R. for educational expenses that the district court found to have been "tie[d] to" Defendant's criminal conduct and (2) $3,420 to R.S. for the expense of hospitalization for mental-health care that the district court found to have been related to a history of sexual abuse and bullying.

## DISCUSSION

### I. Standard of Review

{4} We review the district court's restitution orders for an abuse of discretion. *State v. George*, 2020-NMCA-039, ¶ 4, 472 P.3d 1235. "A trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. In determining whether the district court misunderstood the law, we review its interpretation of Section 31-17-1 de novo. *George*, 2020-NMCA-039, ¶ 4.

### II. The District Court Ordered Restitution for Damages That Are Compensable Under Section 31-17-1

{5} Defendant argues that the restitution statute, Section 31-17-1, barred the district court from ordering him to pay compensation for educational and medical expenses because those expenses relate to the victims' mental anguish. We disagree.

{6} Defendant's argument requires us to interpret the statute, and, in our interpretation, we seek to give effect to the Legislature's intent. *State v. Davis*, 2003-

3

NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. Section 31-17-1(A) provides that "[i]t is the policy of this state that restitution be made by each violator of the Criminal Code . . . to the victims of his criminal activities to the extent that the defendant is reasonably able to do so" and that the statute "shall be interpreted and administered to effectuate this policy." The primary purpose of restitution is "to make whole the victim of the crime to the extent possible." *State v. Lack*, 1982-NMCA-111, ¶ 12, 98 N.M. 500, 650 P.2d 22. Restitution also has the potential to "meaningfully contribute to the rehabilitation process" by offering people who have violated the Criminal Code a "compelling reminder of the wrong done." *Id.* (internal quotation marks and citation omitted). Restitution thus serves "to impress on a criminal defendant the consequences of [the defendant's] actions and to allow crime victims to heal and move on." *State v. Collins*, 2007-NMCA-106, ¶ 15, 142 N.M. 419, 166 P.3d 480. This Court has recognized "the primacy and importance of our state's policy regarding paying restitution." *State v. Lindsey*, 2017-NMCA-048, ¶ 24, 396 P.3d 199.

{7}     "[B]efore approving, disapproving or modifying the plan of restitution," trial courts must consider, among other factors, "the actual damages of each victim." Section 31-17-1(E). In restitution proceedings, "actual damages" are, generally, the types of damages recoverable in civil proceedings, with specific exclusions:

4

"[A]ctual damages" means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish and loss of consortium.

Section 31-17-1(A)(2).[2] The issue here is whether the damages that the district court ordered Defendant to pay—damages for educational expenses and medical expenses—fall within one of the categories that the Legislature excluded from the definition of "actual damages." Defendant argues that, because both victims' damages are "related to" and the "result of" "mental anguish," they are not recoverable as restitution. We reject this argument because it deviates from the plain meaning of the language chosen by the Legislature and because expanding the exclusions beyond the plain meaning would undermine the goals the Legislature sought to achieve.

{8}    Our analysis begins with the plain language of the statute, *Davis*, 2003-NMSC-022, ¶ 6, which cannot be squared with the interpretation Defendant asks us to adopt. The statute excludes damages "for" mental anguish, not, as Defendant contends, damages relating to or resulting from mental anguish. The specific question before us is what the Legislature meant when it excluded damages "for" mental anguish, and the plain language of the statute tells us where to look for the answer. Because the statute carves damages for mental anguish out of "all damages

_____

[2]The restitution statute does not "limit or impair the rights of victims to recover damages from the defendant in a civil action." Section 31-17-1(I).

which a victim could recover against the defendant in a civil action arising out of the same facts or event," § 31-17-1(A)(2), we look to civil law. A civil action arising out of these facts and events would sound in tort, and tort law affords injured persons compensation for their pecuniary losses and, separately, "some pecuniary return" for their physical or emotional suffering. Restatement (Second) of Torts § 903 cmt. a (1979); *see also* Restatement (Second) of Torts § 924(a), (c) (1979) (listing "reasonable medical and other expenses" and "bodily harm and emotional distress" as distinct categories of damages recoverable for a tortious invasion of personality); Dan B. Dobbs et al., *The Law of Torts* § 479 (2d ed. 2021) (distinguishing between damages for "[e]xpenses incurred by reason of [an] injury" and damages for "[p]ain and suffering in its various forms, including emotional distress").

{9}     Our civil uniform jury instructions on damages illustrate the distinction between compensation for pecuniary loss and compensation for physical or emotional suffering. In personal injury cases, UJIs 13-1804 and -1805 NMRA are used to instruct the jury to determine the reasonable value of the plaintiff's necessary expenses, both medical and nonmedical. And UJI 13-1807 NMRA is used to instruct the jury to determine the appropriate compensation for the plaintiff's pain and suffering, explaining that "[n]o fixed standard exists for deciding the amount of these damages" and that jurors must "use [their] judgment to decide a reasonable amount to compensate the plaintiff for the pain and suffering." Defendant neglects this

6

distinction by conflating damages relating to or resulting from mental anguish with damages meant to compensate a victim *for* mental anguish *itself*. The distinction is crucial here. While the damages at issue may relate to or have resulted from the victims' mental anguish, they are meant to compensate for pecuniary losses, not mental anguish. Because Section 31-17-1 does not exclude damages for pecuniary losses from those recoverable as restitution, Defendant's argument lacks merit under the plain language of the statute.

{10}   Construing the statutory exclusions broadly, as Defendant urges, would undermine the policies underlying the restitution statute. The Legislature sought to advance those policies with respect to all types of crimes; it did not omit any crimes. But, under Defendant's reading of the statute, victims of certain types of crimes, such as sexual assault and battery, might be barred from recovering *any* restitution because their pecuniary losses could be characterized as being related to or having resulted from their pain, suffering, and mental anguish. For example, Defendant's interpretation would bar a court from ordering restitution to compensate the victim of a battery for the cost of medical treatment for injuries caused by the defendant's crime because that cost relates to or resulted from the victim's pain and suffering. Because Defendant's interpretation would produce absurd and unjust results, we reject it as contrary to the intent of the Legislature. *See State v. Santillanes*, 1982-NMSC-138, ¶ 4, 99 N.M. 89, 654 P.2d 542. Adhering to the unambiguous statutory

7

language, we hold that Section 31-17-1(A)(2) does not bar restitution to compensate victims for pecuniary harms caused by a defendant's criminal conduct, even if those harms relate to or result from mental anguish.

### III. Substantial Evidence Supports the District Court's Determination That Defendant's Criminal Conduct Caused the Damages in Each Case

{11}  In a contested restitution hearing, the prosecution bears the burden of presenting an "adequate evidentiary basis" for the trial court to conclude that there is a "direct, causal relationship" between the defendant's criminal activities and the victim's damages. *State v. Madril*, 1987-NMCA-010, ¶¶ 6-7, 105 N.M. 396, 733 P.2d 365; *see also Lack*, 1982-NMCA-111, ¶¶ 23-26 (explaining that, as part of the sentencing process, orders of restitution depend on "accurate information" and "sound judicial discretion" for their propriety). In other words, the prosecution must establish that the victim's damages were a "reasonably foreseeable" result of the defendant's criminal conduct. *State v. Ellis*, 1995-NMCA-124, ¶ 15, 120 N.M. 709, 905 P.2d 747. The district court concluded that the State did so here, and we will not disturb that finding as long as it is supported by substantial evidence—evidence that would allow a reasonable person to accept the district court's conclusion. *See Jones v. Augé*, 2015-NMCA-016, ¶ 48, 344 P.3d 989. Defendant does not contend that, as a general matter, criminal conduct like his cannot be the proximate cause of compensable harms associated with education or mental-health care; he argues only

8

that the requisite causal connection does not exist in these cases. We are not persuaded that the district court erred in its conclusion on causation in either case. We address each order in turn.

{12} The damages in E.R.'s case stem from a decline in her school performance after she disclosed the incident. Defendant does not argue that the evidence is inadequate to support the conclusion that E.R.'s performance in school declined soon after E.R.'s disclosure that Defendant had sexually abused her. Instead, he argues that the cause of the decline in performance was the 2017 disclosure of his conduct, not the conduct itself, which occurred in 2010. This argument defies common sense, which dictates that E.R.'s disclosure *and* the difficulties that followed were brought about by Defendant's abuse of E.R., and that the difficulties were a foreseeable consequence of that abuse. *Cf. State v. Landgraf*, 1996-NMCA-024, ¶ 31, 121 N.M. 445, 913 P.2d 252 (recognizing the role of common sense in the determination of proximate causation). We conclude that Defendant's argument lacks merit.[3]

---

[3] We reject Defendant's argument insofar as he contends that, despite identifying Defendant in her disclosure, E.R. was disclosing some abuse other than Defendant's. There is no evidence of other abuse in this case, and we decline to hold, based on such baseless speculation, that the district court erred and that, as a matter of law, there is not a direct, causal relationship between Defendant's criminal conduct, E.R.'s disclosure of it, and the damages that Defendant concedes to have flowed from the disclosure. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record."); *cf. Herrera v. Quality Pontiac*, 2003-

9

**{13}** Turning to R.S.'s case, we believe the evidence would allow a reasonable person to conclude that Defendant's sexual abuse of R.S. caused her hospitalization. R.S.'s mother testified that, after R.S. made her disclosure, she became suicidal and needed inpatient care for her mental health and that her hospitalization was a direct result of the incident involving Defendant. The district court was entitled to conclude that this testimony was credible, *see Cobb v. Gammon*, 2017-NMCA-022, ¶ 39, 389 P.3d 1058, and the testimony supports a finding of causation.

**{14}** Defendant contends that there is not a direct, causal relationship between his criminal conduct and R.S.'s hospital stay, which occurred four years later, because her hospitalization was attributed to sexual abuse in general and not Defendant's acts in particular and because bullying was identified as one of the reasons for R.S.'s hospitalization. Defendant only elaborates on this contention by emphasizing a snippet of testimony given by R.S.'s mother, who agreed under cross-examination that medical records identified a history of sexual abuse and bullying as the reasons for R.S.'s hospitalization. But the law allowed the district court to find that Defendant's conduct caused R.S.'s hospitalization even if other causes also contributed. *See* Rule 13-305 NMRA (explaining that, for an act to be a cause, it

---

NMSC-018, ¶¶ 34-35, 134 N.M. 43, 73 P.3d 181 (recognizing that causation is a question for the fact-finder and, although "there [was] not great closeness in the connection between [the d]efendant's [negligence] and the [plaintiff's] injuries," declining to hold, as matter of law, that the defendant did not cause the injuries).

"need not be the only explanation" for the harm "nor the reason that is nearest in time or place" and that an act "is sufficient if it occurs in combination with some other cause to produce the result" as long as the act is "reasonably connected as a significant link" to the harm). And Defendant fails to develop any legal argument that the testimony on which he relies negates the district court's finding of causation. We therefore decline to address the issue on the merits. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (explaining that "[i]t is of no benefit either to the parties or to future litigants for [courts] to promulgate case law based on [their] own speculation" about "what a party's arguments might be" (alteration, internal quotation marks, and citation omitted)).

{15}     We hold that the district court did not err in concluding that Defendant's criminal conduct caused the victims to suffer the harms for which the district court ordered restitution.

**CONCLUSION**

{16}     We affirm both orders of restitution.

{17}     **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**


**WE CONCUR:**

11

_____

**MEGAN P. DUFFY, Judge**


_____

**JANE B. YOHALEM, Judge**